REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1008

September Term, 2014

---

LUCY WARE

v.

PEOPLE'S COUNSEL
FOR BALTIMORE COUNTY, ET AL.

---

Eyler, Deborah S.,
Meredith,
Leahy,

JJ.

---

Opinion by Eyler, Deborah S., J.

---

Filed: July 2, 2015

Lucy Ware, the appellant, appeals from a judgment of the Circuit Court for Baltimore County affirming a decision of the Board of Appeals for Baltimore County ("the Board"). The Board's decision denied Ware's petitions for a special hearing and for zoning variances, both of which arose from her proposal to convert a single family home into a church. The appellees are the People's Counsel for Baltimore County ("People's Counsel") and 21 nearby residents who appeared before the Board as protestants and participated in the judicial review proceedings.[1]

Ware presents four questions for review, which we have combined and rephrased as follows:

I.      Did the Board err when it determined that the residential transition area regulations set forth in the Baltimore County Zoning Regulations ("BCZR") imposed conditions upon Ware's proposed change in use of the property?

II.     If the Board correctly determined that the RTA regulations applied, was the Board's decision to deny Ware an exception from those regulations legally correct and supported by substantial evidence in the record?[2]

---

[1]The protestants are: Barbara Roberson, Jimmie Roberson, Ruthanne Otto, Tom Otto, Barry Powell, Sylvia Powell, Gayle Emerson, Lillian Nolley, Helen Aiken, Linda Miller, Tim Lang, Peggy Lang, Wade Young, II, Dale Watkins, Rathea Mims, Al Michel, Evelyn Michel, E. Eddie Daniels, Muriel Lyles, Clyde Lyles, and Ella Green.

While the protestants filed a separate brief in this Court, they also adopted the arguments raised in People's Counsel's brief. We shall refer to the appellees collectively as "People's Counsel" unless otherwise necessary.

[2]As framed by Ware, the questions are:
1.      Did the Board err when it determined that Residential Transition Area ("RTA") regulations are applicable in this instance, considering that the purpose of the RTA is to regulate housing types?
2.      Did the Board err when it determined that the RTA regulations applied notwithstanding that the Property is not being developed and instead the

(continued...)

For the reasons to follow, we shall affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

Ware was born and educated in Kenya, where she earned a degree in construction engineering. She has lived in the United States for over 20 years. In 1996, she established a non-denominational Christian church known as "Jesus Christ is the Answer Ministries" ("the Church"). For many years, the Church operated in rented space in a hotel at Cross Keys, in Baltimore City. In 2005, Ware became an ordained minister.

On August 31, 2012, Ware purchased a 2,900 square-foot rancher style house on a 1.2 acre lot at 4512 Old Court Road, in Milford Mill ("the Property"). The Property was built in 1951 and is located in "Diana Acres," a residential subdivision. It is zoned Density Residential ("DR") 3.5 (3.5 units permitted per acre), and is situated in the middle of a residential block. All the surrounding properties are single-family homes that are zoned DR 5.5 (5.5 units permitted per acre).

The Property was used as a single-family residence from the time it was built until Ware purchased it (61 years). Ware and her husband do not live at the Property; they live in

---

[2](...continued)
   use of the building thereon is being converted from a single family dwelling to a church?

3. Did the Board err when it applied the RTA as a use regulation and considered the impacts of the proposed church use on the neighborhood?

4. Did the Board err when it found that the proposed use/conversion of the property was not an exception to the application of the RTA regulations?

a house on Liberty Road. Ware bought the Property in order to convert it from use as a single-family residence to use as a church, *i.e.*, for the operation of the Church.

### A. The Pertinent Zoning Regulations

Article 1B of the BCZR governs DR Zones in Baltimore County ("the County").[3] A church or any other building used for religious worship is a use "permitted as of right" in a DR zone. § 1B01.1.A.3. Even a permitted use in a DR zone must comply with section 1B01.1.B, however, which establishes "[d]welling-type and other supplementary use restrictions based on existing subdivision and development characteristics." One such restriction pertains to residential transition areas ("RTA"), which are buffer and screening areas. § 1B01.1.B.1. An RTA is a "one-hundred-foot area, including any public road or public right-of-way, extending from a D.R. zoned tract boundary into the site to be developed." § 1B01.1.B.1.a(1).

As relevant here, an RTA is "generated" if the property "to be developed is zoned D.R. and lies adjacent to land zoned . . . D.R.3.5 [or] D.R.5.5" containing a "single-family detached . . . dwelling within 150 feet of the tract boundary." § 1B01.1.B.1.b. A property owner may seek a variance from the RTA buffer requirements, but only if 1) the variance is recommended by certain County agencies *or* 2) there is a finding at a development review hearing, pursuant to Article 32, subtitle 4 of the County Code ("the Code"), that a modification to the RTA satisfies compatibility criteria and that a reduction in the RTA "will

_____

[3]All citations are to the BCZR unless otherwise indicated.

3

not adversely impact the residential community . . . adjacent to the property to be developed." § 1B01.1.B.1.c.

An RTA "use is any use" permitted as of right or by special exception in the zone or "[a]ny [business or industrial] parking area permitted under Section 409.8.B subject to the approval of a specific landscape plan for the buffer area which must meet the requirements for a Class A plan." § 1B01.1.B.1.d.

Section 1B01.1.B.1.e establishes the "[c]onditions" in an RTA. Any single-family detached, semi-detached, or duplex dwelling is permissible within an RTA. A "parking lot" must be "set back from the tract boundary 75 feet and provide a fifty-foot RTA buffer." § 1B01.1.B.1.e(2). The "buffer" must be an "upgraded, uncleared, landscaped buffer" and may not contain drainage areas, stormwater management ponds, or accessory structures, unless otherwise directed by the hearing officer upon the recommendation of the County. § 1B01.1.B.e(3).

There are "[e]xceptions to residential transition" that, if applicable, eliminate the "conditions" set forth above for a proposed site plan. § 1B01.1.B.1.g. Four of the exceptions pertain to churches. As relevant here, subsection (6) excepts a "new church or other building for religious worship, the site plan for which has been approved after a public hearing in accordance with Section 500.7" if there is a finding that "the proposed improvements are planned in such a way that compliance, to the extent possible with RTA use requirements,

4

will be maintained and that said plan can otherwise be expected to be compatible with the character and general welfare of the surrounding residential premises."

## B. *The Proposed Changes to the Property*

The house on the Property is situated on the eastern side of the lot, 28 feet from the property line of the neighboring property at its closest point. When Ware purchased the Property, it had a macadam driveway that ran from Old Court Road to the east of the house. The driveway emptied into a wide paved parking area that extended nearly to the eastern property line.

Ware replaced the roof of the house and added a deck. She did not make any other changes to the exterior of the house, and does not plan to do so. Significant to the issues in this case, Ware created a parking lot to the rear of the house by covering the grass in that area with gravel. To access this parking lot, cars must drive beyond the end of the macadam driveway along the eastern side of the house and turn left onto the gravel lot. Ware planted 45 Leyland Cypress trees along the eastern and northern Property lines to partially screen the new parking lot.[4]

In October of 2012, Ware held two Church events on the Property: a cookout and a party. During both events, parishioners parked on the gravel parking lot and also on the lawn at the rear of the Property. Neighbors counted 50 cars at the Property. They complained to

_____

[4]Ware plans to renovate the interior of the house to accommodate its use as a church. At the time of the relevant proceedings, she had not undertaken any such changes.

County zoning authorities, who contacted Ware and advised her that she could not use the Property as a church until she brought it into compliance with the BCZR.

## C. *The Zoning Petitions*

On December 21, 2012, Ware filed petitions for a special hearing and zoning variances with the County Department of Permits, Approvals, and Inspection. Her petition for special hearing sought to change the Property's use from a single-family residence to a church; to allow an RTA buffer of 0 feet in lieu of the required 50 feet; and to allow an RTA setback of 0 feet in lieu of the required 75 feet from a tract boundary to a parking lot. Ware sought variances from parking regulations that require every parking space to have direct access to an aisle (section 409.4); the surface of the lot to be "durable and dustless" (section 409.8A2); and the lot to be striped (section 409.8A6).

In January of 2013, People's Counsel entered its appearance in the case.

On February 27, 2013, a hearing was held before an Administrative Law Judge ("ALJ") at the Office of Administrative Hearings. On March 7, 2013, the ALJ issued a written decision recommending denial of Ware's petitions. Ware noted a timely appeal to the Board.

On June 18, 2013, the Board conducted a *de novo* hearing. Ware testified and called two Church members who supported her petitions. She also called as an expert witness Bruce Doak, P.E., the engineer and property line surveyor who prepared her site plan.

The site plan shows the contours of the existing house on the Property with the gravel parking lot at the rear. It shows that the parking lot has 16 spaces, which is the number required for a "principal place of worship" with 64 seats, under section 409.6. The easternmost parking space is only a few feet from the property line with the adjacent residential property. All or part of six of the parking spaces are within the 50-foot RTA buffer and all or part of 10 of the parking spaces are within the 75-foot RTA setback area. The driveway is entirely within the 50-foot buffer.

Ware testified that the Church has 30 adult members. They bring their children to services and are permitted to bring guests. She hopes to increase church membership, but will determine the maximum size based upon fire department occupancy regulations. She expects that parishioners will travel to the church by car and by bus. If the parking lot is full, they can "park on the grass." She plans to hold one traditional service on Sunday mornings, prayer and worship services on Monday and Friday evenings from 7:00 p.m. to 8:30 p.m., and prayer services on Wednesday evenings in the same time frame.

Doak testified that without zoning relief Ware cannot use the Property as a church because there is no area of the Property for a parking lot that will not infringe on the 75-foot RTA setback area and the 50-foot RTA buffer. Doak presented an alternate site plan to show that a parking lot could be reconfigured to move more of the parking out of the buffer and setback areas, but even this site plan (which the parties agree was not before the Board for approval) would include some parking within those areas. With respect to the driveway,

7

Doak explained that if the Property were used as a dwelling, it would not need to comply with the RTA conditions; once the use changed to a church, the driveway was within the RTA buffer and zoning relief was necessary to bring it into compliance.

Doak also testified that three other churches are located on Old Court Road in close proximity to the Property. Two are in a DR 5.5 zone and one is in a DR 3.5 zone. Doak did not testify about whether these church properties comply with the RTA conditions.

Finally, with respect to the parking variances, Doak opined that the Property is unique because it is larger than many lots in the area and had not reached maximum density.

Seven of the protestants testified in opposition to the petitions. They expressed concern about increased traffic and noise that will result if the Property is allowed to be converted for use as a church, and about decreased property values. Dale Watkins, who lives in a house behind the Property, testified that a parking lot and additional parking at the rear of the Property likely will cause "noise and commotion," especially during the evening hours when the area is dark.

The protestants called James Patton, P.E., as an expert witness. He testified that Ware's site plan did not satisfy even the minimal RTA requirements. With respect to the variance requests, he opined that the Property was not unique and that the hardships Ware was claiming were self-imposed because she did not investigate the zoning requirements for a church before she purchased the Property.

8

At the conclusion of the hearing, the Board directed the parties to submit memoranda of law. On July 30, 2013, the Board reconvened to deliberate.

On October 9, 2013, the Board issued its final written decision denying the petitions. After summarizing the evidence and the relevant regulations, the Board turned to the threshold question whether an RTA was "generated" by Ware's proposed change in use of the Property. That inquiry turned on whether the "proposed use as a 'church' is a residential transition use'" under sections 1B01.1.B.1.b & d. The Board determined that it is a "residential transition use" because a church is a use permitted as of right in the zone, the Property is in a covered DR zone, and the Property is adjacent to properties in a covered DR zone. Thus, "the transition area [is] generated."

The Board rejected Ware's argument that "because she [was] not making any exterior structural changes or additions to the home" the RTA was not generated. To support this argument, Ware pointed to language in section 1B01.1.B.1 that references the site or property "to be developed," and the definition of "development" in section 32-4-101(p) of the Code, which includes "the improvement of property for any purpose involving building." The Board concluded that Ware was "improving" the Property, and thus was developing it, because she was "changing the landscaping, driveway and parking that is required under the BCZR to change the use from single family home to church." The Board referenced the definition of "[i]mprovements" in the Code, which includes "[l]andscaping" and "[o]ther improvements as determined necessary and appropriate by the [C]ounty." Code § 32-4-

9

101(w). The Board found that the County had required Ware to landscape the Property to "screen the parking lot from the adjoining property." Further, the County had required Ware to provide off-street parking for the proposed church use, which also qualified as an improvement "determined necessary and appropriate by the [C]ounty."

The Board then turned to the question whether the church use "qualifie[d] for an exception from the RTA restrictions under 1B01.1.B.1.g(6)," the only exception that possibly could apply to the Property. The Board opined:

> [T]he proposed Church does not even minimally comply with the RTA requirements. The proposal is for no buffer and no setbacks. The evidence did not show that the plan submitted by [Ware] would be compatible with the character or general welfare of the surrounding homes which homes are occupied by the Protestants who testified. The Board finds credible the concerns voiced by the Protestants concerning increased traffic generated by this use in the middle of a residential block.
>
> While [Ware] testified that there were 30 members, the parking calculations on the site plan revealed that this was a 64 seat church. [Ware] agreed that members could bring guests and family members as well as children. We see this Church as being in the early stage of growth and we expect and anticipate that it will continue to grow, particularly given the charitable work that it does. The modest size of this single family home, on 1.2 acres, is not sufficient to house the planned functions and services.

The Board noted that photographs of the other three churches on Old Court Road showed that each property had adequate space for a parking lot that was "paved and striped," so that the "impact on the surrounding properties" was less intense. In contrast, it was "not compatible with the neighborhood for cars to park on the grass [of the Property] for church activities that [would] occur during the week and on weekends." For all of these reasons, the

10

Board determined that the subsection g(6) exception was not satisfied and denied the petition for special hearing.

The Board's denial of Ware's petition for special hearing rendered moot her petition for parking variances. The Board stated, however, that had it considered that issue, it would have denied the requested variances because the Property was not unique and because the hardships resulting in any practical difficulty all were self-imposed.

Ware timely filed an action for judicial review in the Circuit Court for Baltimore County. That court affirmed the decision of the Board. This appeal followed.

We shall include additional facts as necessary to our discussion of the issues.

## STANDARD OF REVIEW

In an appeal from a judgment entered on judicial review of a final agency decision, we look "through" the decision of the circuit court to review the agency decision itself. *People's Counsel v. Country Ridge Shopping Center, Inc.*, 144 Md. App. 580, 591 (2002). Our role "in reviewing [the final] administrative agency adjudicatory decision is narrow.'" *Bd. of Physician Quality Assurance v. Banks*, 354 Md. 59, 67 (1999) (citing *United Parcel v. People's Counsel*, 336 Md. 569, 576 (1994)). It is limited to determining whether "'there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.'" *Id*. at 67–68 (quoting *United Parcel*, 336 Md. at 577).

11

"An agency's fact-finding is based on substantial evidence if 'supported by such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Kim v. Md. State Bd. of Physicians*, 196 Md. App. 362, 370 (2010) (quoting *People's Counsel v. Surina*, 400 Md. 662, 681 (2007)). "The agency's decision must be reviewed in the light most favorable to it; because it is the agency's province to resolve conflicting evidence and draw inferences from that evidence, its decision carries a presumption of correctness and validity." *State Bd. of Physicians v. Bernstein*, 167 Md. App. 714, 751 (2006). In contrast, while we may "give weight to an agency's experience in interpretation of a statute that it administers, . . . it is always within our prerogative to determine whether an agency's conclusions of law are correct." *Schwartz v. Md. Dep't of Natural Res.*, 385 Md. 534, 554 (2005).

## DISCUSSION

### I.

Ware contends the Board erred as a matter of law in ruling that the RTA regulations apply to the proposed change in use of the Property. She offers two reasons in support. First, the RTA regulations are expressly intended to *"assure that . . . adequate buffers and screening are provided between dissimilar housing types*." § 1B01.1.B.1.a(2) (emphasis added). Ware maintains that because she is proposing an institutional use on the Property, the RTA regulations do not come into play. Second, Ware asserts that the RTA regulations only apply when a property is being "developed." According to Ware, the changes she

12

proposes to the use of the Property do not amount to "development" within the dictionary meaning of that term.

People's Counsel responds that Ware is "bound by the four corners of her petition for special hearing," in which she sought relief from the RTA buffer and setbacks, and may not now argue that the RTA conditions do not apply to the Property at all. In any event, People's Counsel maintains that the RTA conditions apply to any "residential transition use," which includes a church use. With respect to Ware's argument that she is not developing the Property, People's Counsel responds that the landscaping and creation of a new parking lot plainly amount to development of the Property under the definitions in the Code and in the dictionary.

Our interpretation of the RTA regulations in the BCZR is governed by the well-established principles of statutory interpretation.

> We have said time and again that "the paramount object of statutory construction is the ascertainment and effectuation of the real intention of the Legislature." The process of statutory interpretation begins with the plain language of the statute, where we "read[ ] the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." If the plain language of the statute is clear and unambiguous, the process ends and "no further sleuthing of statutory interpretation is needed."

*Fisher v. E. Corr. Inst*., 425 Md. 699, 706-07 (2012) (citations omitted).

We begin with Ware's argument that the RTA conditions only apply to "dissimilar housing types." She maintains that because she is proposing to change the use of the Property from a residential dwelling to a church, the Property need not comply with any RTA

13

conditions. We disagree. The language Ware cites appears in section 1B01.1.B.1.a, which is the purpose clause of the RTA regulations. It states that "the purpose of an RTA is to assure that similar housing types are built adjacent to one another or that adequate buffers and screening are provided between dissimilar housing types." Although this may be a central purpose of the RTA regulations, subsection d makes plain that the regulations apply even when a proposed use is not residential in character. As relevant here, subsection d defines a "residential transition use" to be "***any*** use . . . permitted as of right under Section 1B01.1.A." (Emphasis added.) That section permits as of right many non-residential uses within a DR zone, including hospitals, day care facilities, schools, and churches. Subsection d applies to "any" of these uses, without regard to whether the use is residential or non-residential. Ware's proposal to convert a single-family dwelling in a DR 3.5 zone into a church involves a "residential transition use." The Board's legal conclusion to this effect was correct.[5]

---

[5]Ware argues that the Board's decision in this case is contrary to a prior Board decision and, as such, its legal conclusion that the RTA was applicable is erroneous as a matter of law. We disagree. The prior decision of the Board, which Ware acknowledges is not binding on this Court, involved the development of a Sonic fast food restaurant on a split-zoned parcel. *See In the Matter of Michael R. Mardiney, Jr. M.D. - Legal Owner*, Case No. 13-171-SPHXA (decided Nov. 21, 2013). The restaurant was to be built on the front of the Property, which was zoned commercial, and an existing parking lot was to be repaved and screened on the back part of the Property, which was in a DR zone. The Board determined that because "[n]o housing [was] proposed to be constructed," the RTA did not apply and because the property owner was not constructing a parking lot on the DR portion of the property, but was continuing its permitted use in that regard, there also was no development of the DR zoned portion of the property. No petition for judicial review was filed.

(continued...)

14

This conclusion also is borne out by the exceptions to the RTA conditions. If compliance with RTA conditions only would be required when a property owner proposed the development of a "dissimilar housing type," there would be no need for the four exceptions for church uses, the exception for a child care center, or the exception for transit facility or rail passenger facility. None of these uses involve housing and all are expressly excepted from the application of the RTA conditions. *See Fisher*, 425 Md. at 706 ("we 'read[ ] the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.'" )(citation omitted).

We now turn to whether Ware is "develop[ing]" the Property for use as a church. In her memorandum of law submitted to the Board following the hearing, Ware argued that she is not developing the Property, citing the definition of that term as it appears in section 32-4-101(p) of the Code. The Board rejected her argument, noting that that definition encompasses "[t]he improvement of property for any purpose involving building" and, under another definition in the Code, "[i]mprovements" include landscaping and any other "improvements as determined necessary and appropriate by the county." Code § 32-4-101(w).

---

[5](...continued)

For the reasons already explained, we have held as a matter of law that the plain language of the RTA regulations makes the buffer and setback conditions applicable to RTA uses, not just to dissimilar housing types. Thus, to the extent the two decisions are in conflict, we conclude that the Board's decision in the instant case correctly interpreted the RTA regulations.

15

Before this Court, Ware now argues that the Board erred as a matter of law by relying on the definition *she* cited to it. She asserts that the Board should have looked to the dictionary definition of "development" because the BCZR instructs that any term not defined therein shall have "the ordinarily accepted definition as set forth in the most recent edition of Webster's Third International Dictionary of the English Language, Unabridged." § 101. The pertinent Webster's definition of "develop" is "to make actually available or usable . . . as (1) to convert (as raw land) into an area suitable for residential or business purposes."

Under either definition, Ware's changes to the Property amounted to "development." As discussed, she created a new parking lot behind the house on the Property. Although she did not pave or stripe the lot (and sought variances to avoid having to do so), she poured gravel over the area to establish the lot. She planted numerous trees to screen the new parking lot and agreed to plant additional trees if the relief requested in her petition for special hearing were granted. She proposed new drainage and stormwater management systems to accommodate the new use. These changes to the Property were necessitated by the conversion of the Property from use as a single-family residence to a 64-seat church. The changes are improvements under the Code definition. They also are necessary to make the Property usable as a church, under the dictionary definition, because, unlike a single-family residence, which only requires parking to accommodate residents, a church (especially a 64-seat church) requires parking for parishioners who will be coming to services and events. Indeed, that is the very reason that Ware put a gravel parking lot on the Property. For all of

16

these reasons, we perceive no error in the Board's finding that the Property was being developed by Ware for use as a church.

## II.

Ware contends the Board erred by denying her relief from the RTA because, even if the RTA regulations apply (which we have held they do), the Property is excepted from the buffer and setback conditions. People's Counsel responds that the Board correctly found that Ware's site plan failed even to minimally comply with the RTA conditions and that the "incompatibility with the general welfare of the surrounding premises [was] conspicuous."

As discussed, section 1B01.1.B.1.g(6) states that a "new church or other building for religious worship, the site plan for which has been approved after a public hearing in accordance with Section 500.7" may be excepted from the RTA conditions if two requirements are met. First, "the proposed improvements [must be] planned in such a way that compliance, to the extent possible with RTA use requirements, will be maintained." § 1B01.1.B.1.g(6). Second, the "plan [must] be compatible with the character and general welfare of the surrounding residential premises." *Id*.

The Board found that neither prong of the exception was met. Ware's site plan did not comply with the RTA use requirements at all because it proposed no buffer and no set back between the parking lot and the eastern boundary of the Property. As mentioned, Doak acknowledged in his testimony that Ware could configure the parking lot to reduce its infringement upon the RTA. The Board's finding that the site plan did not comply with the

17

RTA to the extent possible was supported by substantial evidence in the record and validates its conclusion that the exception does not apply.

The Board also found that the "plan" could not "otherwise be expected to be compatible with the character and general welfare of the surrounding residential premises." Ware takes issue with the Board's finding that the *use* of the Property as a church would be incompatible with the surrounding residential premises. She points out that a church is a use as of right in a DR zone and argues that the RTA regulations do not restrict use; they only restrict building or developing land within the buffer. She argues that the Board improperly considered how the *use* would affect the neighboring properties.

Although the Board commented on the testimony from the protestants concerning noise and traffic occasioned by the change in use, it also found that the physical layout of the Property was not suited for the planned use. The other church properties in the area are situated on larger lots and have sufficient space for parking. In contrast, the planned 16-space parking lot immediately adjacent to a residential property, mostly within the RTA buffer and setback areas, is not compatible with the character and general welfare of the neighborhood. These findings are supported by substantial evidence in the record and are a sufficient basis to support the Board's incompatibility finding.

For all of these reasons, the Board did not err by concluding that the RTA conditions applied to the Property, that the proposed site plan did not satisfy the conditions, and that the Property was not excepted from those conditions. In light of our holding, we need not

18

address the Board's alternative ruling on Ware's petition for variances from parking regulations.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANTS.**