*County Council of Prince George's County v. Palmer Road Landfill, Inc.*
No. 2584, Sept. Term, 2018
Opinion by Leahy, J.

**Statutory Time Prescriptions > Waiver**

Where a deadline is fixed in a statute as a condition precedent to a cause of action, or is jurisdictional, it cannot be waived. *See Bowles v. Russell*, 551 U.S. 205, 213 (2007) (explaining that, after failing to file an appeal within the time set by statute, the petitioner could not "rely on forfeiture or waiver to excuse his lack of compliance with the statute's time limitations"). Non-jurisdictional time prescriptions, by contrast, may be subject to forfeiture and waiver. *See Kim v. Comptroller of Treasury*, 350 Md. 527, 536 (1998) ("Statutes of limitations are not ordinarily jurisdictional, and are generally waivable, including the 30-day limit for filing a petition for judicial review.").

**Statutory Time Prescriptions > Waiver**

The timeframes in a county zoning ordinance governing special exception applications were non-jurisdictional time prescriptions, subject to waiver and forfeiture by the government. The internal deadlines, applicable to various government entities, did not present a jurisdictional impediment to the government's ability to make a final decision on an application.

**Judicial Review of Administrative Agency Decisions > Arbitrary and Capricious**

An agency's decision to deny an application on the ground that procedural timeframes were not followed was arbitrary and capricious because the government waived the timeframes when it invited the applicant to file a waiver of a non-jurisdictional deadline, granted that waiver, and subsequently failed to abide by the remaining deadlines itself.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2584

September Term, 2018

_____

COUNTY COUNCIL OF PRINCE
GEORGE'S COUNTY

v.

PALMER ROAD LANDFILL, INC.
_____

Fader, C.J.,
Leahy,
Eyler, Deborah S.
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Leahy, J.
_____

Filed: August 27, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

The County Council of Prince George's County, sitting as the District Council (the "Council"), appeals from a decision by the Circuit Court for Prince George's County in favor of Palmer Road Landfill, Inc. and Palmer Road, LLC (together "Palmer Road"). Palmer Road submitted an application, in 2015, for a special exception and variance to continue operating its 175-acre rubble fill site in Fort Washington, Maryland (the "Application"). The Council denied the Application in 2018 on the ground that certain procedural time limitations contained in § 27-405.1 of the Prince George's County Code ("PGCC")[1] were not followed, prompting Palmer Road's petition for judicial review in the circuit court. The court reversed the Council's order of denial and remanded the matter to the Council with instructions to approve the Application.

The ordinance in question, governing Class 3 fills, specifies that:

Within one hundred and twenty (120) days after an application for a Class 3 fill is accepted by the Planning Board, the Zoning Hearing Examiner **shall** conduct a public hearing. The Zoning Hearing Examiner's written decision on an application **shall** be issued within thirty (30) days after the public hearing. Where the District Council makes the final decision, the Council's final order **shall** be issued within sixty (60) days of the Examiner's decision.

PGCC § 27-405.01(a)(1) (emphasis added).

The Council presents two questions for our review,[2] which we have rephrased as follows:

---

[1] The zoning ordinance for Prince George's County is codified at Subtitle 27 of the Code. PGCC § 27-101 *et seq*.

[2] The Council's questions presented, as written in its brief, are:

(Continued)

1. Did the Council err when it denied the Application based on the failure to comply with the timeframes contained in PGCC § 27-405.01(a)(1)?

2. Did the Circuit Court err when it remanded the Council's decision with instructions to approve the special exception and variance?

We affirm the circuit court's decision to reverse the Council's denial of the underlying Application on procedural grounds because the timeframes contained in PGCC § 27-405.01(a)(1) were waived at every level of review, including when the Council decided to hold a hearing on the Application and failed to raise the issue until its decision to reject the Application. Concurrently, we vacate the court's instruction to the Council to approve Palmer Road's Application because the Council has yet to consider the Application on its merits. Accordingly, we shall affirm, in part, and vacate, in part, the judgment of the circuit court.

## BACKGROUND

### 1. History of Site[3]

Palmer Road owns approximately 175 acres in Fort Washington and has been operating a Class 3 fill[4] on the property through a series of grading permits issued by Prince

---

1. "Was the District Council's final decision supported by substantial evidence, fairly debatable, and not premised upon an erroneous conclusion of law?"
2. "Did the Circuit Court err when it modified Council's final decision with instructions on remand to approve the special exception and variance?"

[3] The site history is drawn from the Statement of Justification that Palmer Road submitted in 2016 as part of its request for a special exception and a variance.

[4] The PGCC defines "Class 3 Fill" as follows:

(Continued)

2

George's County.  The site consisted originally of forty acres on which another company, starting in 1981, operated a rubble dump and then a Class 3 fill.  Palmer Road purchased the forty-acre parcel and the landfill rights in 1989.

In 1991, Prince George's County issued Palmer Road a grading permit, noted as a "reissue," after Palmer Road purchased three additional parcels to expand the site.  Throughout the 1990s, Palmer Road continued to add to the site area and the County continued to issue grading permits for operation of the Class 3 fill.  On June 8, 2000, when the total site area was 108 acres, the County issued Palmer Road a grading permit with an expiration date of June 8, 2005.  Palmer Road subsequently placed an additional sixty-seven acres under contract and, on September 26, 2003, was issued a grading permit with an expiration date of September 26, 2005 for the proposed total site area of 175 acres.

## 2. CB-87-2003

---

Temporary use of land for the spreading or depositing of Class 3 fill materials, including without limitation soils difficult to compact or with other than optimum moisture content; rock and similar irreducible materials, without limit as to size, provided no detectable voids are formed into which overlying soils may later be washed; and topsoil, intermittently layered with nonorganic soil.  On properties with Class 3 fill uses, at least twelve (12) inches of soil shall cover all rock or irreducible materials with any linear measurement greater than eight (8) inches.  Class 3 fill materials deposited in a fill or disposal area shall be free of pollutants which may constitute a potential public health hazard, reduce surface or groundwater quality, or cause damage to property or drainage systems.  Incidental fill operations associated with the development of subdivisions and other preliminary work of a developing site shall not be considered a Class 3 fill operation.

PGCC § 27-107.01(a)(47.3).

(Continued)

On November 25, 2003, the Council enacted CB-87-2003, which imposed a special exception requirement on Class 3 fills in all zones where they are permitted. The section of the bill now codified at PGCC § 27-405.01 provides the criteria for approval of temporary special exceptions for a Class 3 fill.[5] The bill took effect on March 31, 2004.

The sponsor of the bill had expressed concern over the "proliferation of [Class 3 fill] uses in inappropriate locations in the County without any requirements other than a grading permit." He explained that the purpose of CB-87-2003 was "to provide regulations that would allow the County to have better oversight of new and existing Class 3 fill operations." After suggestions by the sponsor were incorporated, footnotes in the sections of the bill that set forth the uses permitted in different zones provided as follows:

> A Class 3 fill in existence as of October 7, 2003 that is operating pursuant to any validly issued grading permit, and is not in violation, shall be permitted to continue in operation as a matter of right, but is limited to the fill area established by any previously issued grading permit, not to exceed two renewals of the permit. Those fill operations that are in violation on October 7, 2003 have until December 31, 2003 to comply, or their permit is void.

As a result, CB-87-2003 grandfathered existing Class 3 fills, like Palmer Road, for two five-year permit renewals before requiring the fills to obtain special exception approval in order to continue.

Palmer Road, therefore, was able to continue in operation under the grading permit issued on September 26, 2003 until its expiration on September 26, 2005. Then, in

---

[5] CB-27-2003 also repealed and reenacted with amendments the definitions section of the zoning ordinance—PGCC § 27-107.01(a)—and the sections that outline the uses permitted in residential zones, commercial zones, and industrial zones—PGCC §§ 27-441(b), 27-461(b), and 27-473(b), respectively.

accordance with CB-87-2003, Palmer Road was issued its first grading permit renewal on September 29, 2005. The second renewal was issued in September 2010.

### 3. 2015 Special Exception Application

On September 25, 2015, days before its second grading permit renewal was set to expire, Palmer Road submitted an application for a special exception so that it could continue the operation of the existing fill site for an additional five years. One year later, in September 2016, Palmer Road supplied the Prince George's County Planning Department, Development Review Division ("DRD") with a Statement of Justification ("SOJ") in support of the special exception request. Palmer Road included a request for a variance from PGCC § 27-405.01(a)(5)[6] at the end of the SOJ.

Palmer Road's Application was deemed filed on October 10, 2016 when it was accepted by the DRD. On December 2, 2016, Christina Pompa, a member of the technical staff of the DRD ("Technical Staff"), emailed Palmer Road's counsel requesting a response to her comments and revisions to the special exception Application, the SOJ, and the site plan. She instructed Palmer Road to "update [the] project description in [its] application to reference [the] variance sought" and to "update [the] Introduction and Request on page

---

[6] Section 27-405.01(a)(5) places the following restriction on locating a Class 3 fill as a temporary special exception:

> The subject property shall not be located within a three (3) mile radius of properties containing an active or pre-existing approved or non-conforming Class 3 fill, sanitary landfill, transfer station, rubble fill, recycling facility, mining facility, sludge facility, processing facility, sand and gravel operation, or wash plant.

As Palmer Road explained in its SOJ, two closed Class 3 landfills located near its facility created conflicts with § 27-405.01(a)(5). Accordingly, Palmer Road required a variance to obtain special exception approval.

5

1 of the SOJ to reference the need for a variance[,]" unless Palmer Road could provide information to eliminate the need for a variance. Ms. Pompa also informed Palmer Road that she would review the resubmittal and then, if no further changes were necessary, request additional copies for the Zoning Hearing Examiner ("ZHE").

In January 2017, Ms. Pompa followed up and asked Palmer Road's counsel when the resubmittal would be filed and advised that Palmer Road would need to file a "waiver request":

> Per Section 27-405.01(a)(1) of the County Code, the ZHE is required to hold a public hearing within 120 days of date of acceptance by the Planning Board. In this case, the project was accepted on October 10, 2016. Therefore the ZHE is required to hold a hearing by February 7, 2017. We are not going to make that date because the project still needs to be scheduled for a Planning Board date and the TSR needs to be published 2 weeks prior to the PB meeting date. A waiver request will need to be filed with the Zoning Section and we will provide that information to the ZHE either when we transmit the case or prior to transmitting.

That same day, Palmer Road's counsel responded to Ms. Pompa by letter stating:

> Pursuant to Section 27-405.01(a)(1), the applicant respectfully requests a waiver of the 120-day review period for the above-referenced Special Exception to allow time for the applicant to address recently discovered site design related questions. Therefore, please accept this request for the Zoning Hearing Examiner hearing to be rescheduled for a later date.

One month later, on February 6, 2017, the DRD applications supervisor emailed Palmer Road's counsel to request submission of an amended special exception application, a revised SOJ, and a variance fee. Counsel replied the next day to confirm the amount of the variance fee. Then, on February 16, 2017, Palmer Road filed its resubmittal materials, including a revised special exception application and SOJ, and a point-by-point response to the items delineated in Ms. Pompa's December 2, 2016 email.

6

In March 2017, the Technical Staff issued its report recommending approval of the Application with conditions. Because the Planning Board did not schedule the matter for public hearing and, instead, adopted the Technical Staff's recommendation, the Application was transmitted directly to the ZHE on April 4. The ZHE held a public hearing on June 21, 2017 and issued her notice of decision, which approved the Application with conditions, on July 21, 2017.

Pursuant to its authority under PGCC § 27-312(a)(2)(C),[7] the Council, on September 11, 2017, elected to make the final decision on the Application. On October 23, 2017, the Council held oral argument on the matter and heard from a member of the Planning Department, who gave a presentation on the Application, and from Palmer Road. The Chair noted, "[w]e have opposition, but he's not signed up to speak." After asking Palmer Road's counsel a series of questions, another councilmember elected to take the matter under advisement and the oral argument concluded.

On February 12, 2018, the Council issued its final decision denying Palmer Road's Application. The Order of Denial stated that the ZHE's hearing and written decision failed to comply with the procedural requirements of PGCC § 27.405(a)(1). The Order explained that the zoning ordinance "required that the [ZHE] conduct a public hearing on the

---

[7] The Zoning Hearing Examiner's decision on an application for a special exception becomes final 30 days after filing the written decision, with certain exceptions. PGCC § 27-312(a)(2). As is relevant in this appeal, the ZHE's decision will not be final "[i]n any case where, within thirty (30) days after receipt of the Zoning Hearing Examiner's decision, the District Council, upon its own motion and by a majority vote of the full Council, elects to make the final decision on the case itself[.]" PGCC § 27-312(a)(2)(C). Pursuant to PGCC § 27-291(a), the calculation of the 30-day time limit was postponed during the month of August when the Council was in recess.

7

application within 120 days after [the] Planning Board accepted the application on October 10, 2016[,]" making February 7, 2017 the "deadline" to conduct the hearing. A hearing was not held until June 21, 2017, "more than 134 days after the deadline[.]" Further, the Order stated, the ZHE's written decision "was filed more than 30 days after the last day that a public hearing was required to be conducted on the application[:] March 9, 2017." The Order concluded: "These procedural defects violated the limitations and restrictions imposed by law to approve a temporary Special Exception and Variance in this case."

On February 21, 2018, Palmer Road requested, via letter, that the Council reconsider its final decision because the Order of Denial did not discuss the merits of the Application. At the District Council hearing on February 26, the Council took the request for reconsideration under advisement. On March 13, 2018, Palmer Road filed a petition for judicial review of the Council's final decision in the Circuit Court for Prince George's County.[8]

A hearing was held in the circuit court on August 3, 2018. Palmer Road argued that the word "shall" in PGCC § 27-405.01(a)(1) was directory, and did not, as the Council believed, create mandatory deadlines. In addition, Palmer Road contended that there was

---

[8] An applicant who is aggrieved by any final decision of the Council may request judicial review of the decision by filing a petition in the Circuit Court for Prince George's County within 30 days after service of the final decision. Maryland Code (2012, 2018 Supp.), Land Use Article ("LU"), § 22-407(a).

Three days after filing its petition, Palmer Road notified the Council, through another letter, of the appeal and withdrew its request that the Council reconsider the denial. Palmer Road explained that the appeal was filed because the "District Council did not reconsider the application as requested in the letter, during the 30-day time period during which [Palmer Road] had to note an appeal to the Circuit Court for Prince George's County."

no opposition to the Application and "there is no basis for the District Council to deny the special exception. So there [is] no reason to remand it back."

In turn, the Council argued that it could not "decide the case on the merits because the [] hearing was not held within 120 days." The Council asserted that if the court found that it did err in denying the Application on procedural grounds, the "Council should have an opportunity on remand to make the decision on the merits."

The court, on September 12, 2018, reversed the Council's order denying Palmer Road's Application and remanded the matter to the Council "with instructions to approve [Palmer Road's] application" for the special exception and variance. The court established, in its written memorandum order, that its role was "to determine the meaning of 'shall' in the context of a statute setting deadlines for the completion of certain acts in the approval process of a landowner's application for a special exception" under PGCC § 27-405.01. The court ruled that "shall" was directory and not mandatory under the circumstances, and that the Council erred, as a matter of law, in denying Palmer Road's Application for a special exception and variance.

Following the court's entry of final judgment, the Council voted to appeal.[9] This timely appeal followed on September 27, 2018.

**DISCUSSION**

**I.**

---

[9] The District Council may appeal a final judgment of the circuit court to this Court; "[e]ach member of the district council is entitled to vote on whether the district council shall appeal to the Court of Special Appeals[.]" LU § 22-407(f).

9

**Standard of Review**

"When acting in its zoning capacity, the District Council acts as an administrative agency." *Grant v. Cty. Council of Prince George's Cty.*, 465 Md. 496, 503 (2019). "In an appeal from a judgment entered on judicial review of a final agency decision, we look 'through' the decision of the circuit court to review the agency decision itself." *Ware v. People's Counsel for Baltimore Cty.*, 223 Md. App. 669, 680 (2015) (citations omitted).

The scope of our review is narrow, and our role is generally limited to "determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *United Parcel Serv., Inc. v. People's Counsel for Baltimore Cty.*, 336 Md. 569, 576-77 (1994). The agency's fact-finding is based on substantial evidence when it is "supported by such evidence as a reasonable mind might accept as adequate to support a conclusion." *Ware*, 223 Md. App. at 681 (citation omitted). For "legal questions or the agency's conclusions of laws[,]" our review is de novo. *Grant*, 465 Md. at 509.

Certain agency decisions regard matters that are committed to the agency's discretion and expertise. On appeal, we will only reverse when we determine that the decision is "arbitrary and capricious" because "the courts owe a higher level of deference to functions specifically committed to the agency's discretion[.]" *Cty. Council of Prince George's Cty. v. Zimmer Dev. Co.*, 444 Md. 490, 574 (2015) (citation omitted). The "arbitrary and capricious" standard is "highly contextual, but generally the question is whether the agency exercised its discretion 'unreasonably or without a rational basis.'"

*Maryland Dep't of the Env't v. Cty. Comm'rs of Carroll Cty.*, 465 Md. 169, 202 (2019), *cert denied sub nom. Cty. Comm'rs of Carroll Cty., Maryland v. Maryland Dep't of Env't*, 140 S. Ct. 1265 (2020) (citing *Harvey v. Marshall*, 389 Md. 243, 297 (2005)). Correspondingly, we give "considerable weight" to an agency's interpretation and application of a statute which the agency administers. *Baltimore Police Dep't v. Brooks*, __ Md. App. __, __, Nos. 979, 980, 982, 983, 985, 988, 989, 991, 992, 993, 994, September Term 2019, slip op. at 21-22 (filed July 30, 2020) (citation omitted). "The level of deference we provide an administrative agency's interpretation of a statute, however, 'depends on several factors,' including 'the duration and consistency of the administrative practice' and 'the degree to which the agency's construction was made known to the public.'" *Id.* (quoting *Marriott Emps. Fed. Credit Union v. Motor Vehicle Admin.*, 346 Md. 437, 445 (1997)).

## II.

## Timeframes Under PGCC § 27-405.01(a)(1)

### A. Contentions

The Council challenges the circuit court's determination that it erred when it denied Palmer Road's Application for a special exception and variance because the ZHE's recommendation of approval was void ab initio for failure to comply with the timeframes set forth in PGCC § 27-405.01(a)(1). The Council asserts that the word "shall" in PGCC

§ 27-405.01(a)(1) is mandatory, rather than directory, and that Palmer Road "repeatedly failed to revise or resubmit its application(s) to comply with mandatory timeframes in PGCC § 27-405.01(a)(1)." In support, the Council cites case law for the proposition that "the word 'shall' creates a presumption that compliance is 'mandatory' and that failure to comply will invalidate the proceedings or result in some other drastic sanction."

The Maryland General Assembly has bestowed on the Council, under Maryland Code (2012, 2018 Supp.), Land Use Article ("LU"), § 22-206, the power to promulgate procedures and amend its zoning laws.[10] Such "procedures and zoning laws may include

---

[10] In *County Council of Prince George's County v. Convenience & Dollar Market/Eagle Management Company*, we reiterated that Prince George's County derives its authority to engage in land use regulation from the Maryland-Washington Regional District Act (the "RDA"), codified in the Maryland Code in Division II of the Land Use Article ("LU"). 238 Md. App. 613, 617-18 (2018). Writing for our Court, Judge Kehoe expounded:

> No single provision of the RDA sets out the land use control authority of the [D]istrict [C]ouncil[]. However, and among other things, the [D]istrict [C]ouncil[] ha[s] the legislative authority to adopt and amend zoning laws, LU § 22-104; to establish programs for the transfer of development rights, LU § 22-105; to establish procedures for the resolution of disputes as to building permits and other "zoning questions," LU § 20-503; and to enact historic preservation regulations. LU § 22-108. Additionally, the RDA specifically provides that the [District Council] may exercise quasi-judicial review authority over certain land use decisions by that County's Planning Board. *See* LU § 25-210 (authorizing the District Council to review decisions of the Planning Board approving or disapproving detailed site plan applications).
>
> Finally, LU § 22-111 authorizes the District Council to make provisions in the County Zoning Ordinance for the County Board of Appeals to decide questions concerning the extension of legal nonconforming uses within or on buildings or lots, and the resumption of a nonconforming use after interruption "by fire or other calamity."

*Id.* at 623–24 (footnotes omitted).

(Continued)

. . . provisions for hearing and preliminary determinations by an examiner, a board, or any other unit." LU § 22-206(a)-(b).  Accordingly, the Council contends that the circuit court should have focused on the intention of the District Council in enacting CB-87-2003 and, more specifically, the provision of that bill codified at § 27-405.01(a)(1).  The Council maintains that the "intention of the District Council was to provide regulations that would allow the County to have better oversight of new and existing Class 3 fill operations to combat the proliferation of Class 3 fill uses in inappropriate locations in the County without any requirements other than a grading permit."

The Council forcefully cites the Zoning Ordinance's "Interpretations and rules of construction."  Found at PGCC § 27-108.01(a)(19), the applicable provision states, "[t]he words 'shall,' 'must,' 'may only' or 'may not' are always mandatory and not discretionary. The word 'may' is permissive."[11]

Palmer Road counters that the Council did err, as a matter of law, when it denied Palmer Road's Application because "the Council's legal interpretation of the word 'shall' as used in § 27-405.01(a)(1), and therefore the effect of the statute, is legally incorrect." Citing *Pope v. Secretary of Personnel*, 46 Md. App. 716, 718 (1980), *cert. denied*, 289 Md. 739 (1981), among other cases, Palmer Road asserts that the proper analysis that the Council, and the circuit court on review, should have undertaken was to have: 1) reviewed

---

[11] The Council also calls attention to section 27-108.01(a)(7), which provides that "[w]ords and phrases not defined or interpreted in this Subtitle or the Prince George's County Code shall be construed according to the common and generally recognized usage of the language."  Further, "[t]echnical words and phrases, and others that have acquired a peculiar and appropriate meaning in the law, shall be construed according to that meaning." PGCC § 27-108.01(a)(7).

the legislation for a penalty provision; 2) determined whether the action in the legislation was directed toward an "arbiter of the controversy"; and 3) inquired whether the underlying policy for the procedures for approving special exceptions is for the protection of the public. Applying this analysis, Palmer Road urges, we should find that there was no violation of the Zoning Ordinance and the ZHE did not exceed her statutory authority because the 120-day timeframe was directory.

Regardless of whether the requirements of PGCC § 27-405.01(a)(1) are mandatory or directory, Palmer Road asserts that the requirements "were waived upon the specific request of the Technical Staff and that waiver was implicitly ratified by the ZHE." We agree with this last contention.

We do not reach the question of whether the time limitations contained in PGCC § 27.405.01(a)(1) are mandatory or directory because we hold that it was arbitrary and capricious for the Council to enforce, against Palmer Road, timeframes that the Council and other agencies of County government had waived and failed to abide themselves. We begin our analysis, however, with a limited assessment of the timelines contained in PGCC § 27-405.01(a)(1) to ensure that none are jurisdictional.

## B. Non-Jurisdictional Time Prescriptions

Where a deadline is fixed in a statute as a condition precedent to a cause of action, or is jurisdictional, it cannot be waived. *See Bowles v. Russell*, 551 U.S. 205, 213 (2007) (explaining that, after failing to file an appeal within the time set by statute, the petitioner could not "rely on forfeiture or waiver to excuse his lack of compliance with the statute's time limitations"); *Griggs v. C & H Mech. Corp.*, 169 Md. App. 556, 570-71 (2006)

14

(construing the two-year filing deadline in the Workers' Compensation statute as a "condition precedent to the right to maintain the action," and determining that "even if the Commission considered the two year limitations defense to have been withdrawn, the circuit court was obligated to determine whether Griggs filed his claim within the two year period"); *Letke Sec. Contractors, Inc. v. United States Sur. Co.*, 191 Md. App. 462, 480 (2010) (noting without deciding that, "[i]f the timeliness of a motion to vacate under the [Maryland Uniform Arbitration Act] is jurisdictional, parties cannot waive the matter, and indeed, an appellate court has the duty to notice the issue on its own initiative").

Non-jurisdictional time prescriptions, by contrast, may be subject to forfeiture and waiver. *See Kim v. Comptroller of Treasury*, 350 Md. 527, 536 (1998) ("Statutes of limitations are not ordinarily jurisdictional, and are generally waivable, including the 30-day limit for filing a petition for judicial review."); *Colao v. Cty. Council of Prince George's Cty.*, 346 Md. 342, 364 (1997) ("[T]he 30-day requirement for filing the petition [for judicial review] [is] in the nature of an absolute statute of limitations, subject to waiver by failure of a respondent to raise the defense in a proper manner but not subject to discretionary extension[.]").

Recently, the Court of Appeals, in *Rosales v. State*, recognized that Maryland Rule 8-202(a), which "details the time limitation for a party to file an appeal from a final judgment in the circuit court," is a claim-processing rule, rather than a jurisdictional limitation on the Court. 463 Md. 552, 563-64, 568 (2019). At the outset of its analysis, the Court noted that, while appellate jurisdiction is statutorily granted in Maryland, "no statute sets forth a time limitation for an appeal from a final judgment of a circuit court in

15

a criminal matter such as this one.  Instead, the time limitation is governed by the Maryland Rules."  *Id.* at 563.  The Court distinguished "mandatory claim-processing rules that the Courts promulgate" from a "jurisdictional time prescription" on the basis that "'[t]he jurisdictional defect is not subject to waiver or forfeiture and may be raised at any time in the court of first instance and on direct appeal.'"  *Id.* at 567-68 (quoting *Hamer v. Neighborhood Hous. Servs. of Chicago*, __ U.S. __, 138 S. Ct. 13, 17 (2017)).

Having recognized Rule 8-202(a) as a claim-processing rule, the Court instructed that "a reviewing court must examine whether waiver or forfeiture applies to a belated challenge to an untimely appeal."  *Id.* at 568.  The Court emphasized that Rule 8-202(a) "remains a binding rule on appellants" that the Court will continue to enforce, but "the appropriate grounds for dismissal of an untimely appeal is to dismiss for a failure to comply with the Maryland Rules, instead of for lack of jurisdiction."  *Id.*  Looking at the postconviction matter before it, the Court determined that

> given the unique history of the[] proceedings and the apparent consent of all parties, th[e] case present[ed] a narrow circumstance in which [it would] consider the merits without the filing of a timely appeal or without the postconviction court following the appropriate postconviction process.

*Id.* at 570.  The Court further explained that it could take that "step because, considering [its] above reconsideration of how the 30-day filing requirement relates to appellate jurisdiction, there is no jurisdictional impediment for [the Court] to do so."  *Id.*

Following the Council's election to make the final decision on Palmer Road's Application, pursuant to PGCC § 27-312(a)(1)(C), the Council obtained jurisdiction to

16

approve the special exception and variance.[12] The 120-day timeframe contained in § 27-405.01(a)(1) within which the ZHE is required to hold a public hearing, as well as the attendant deadlines for the decisions of the ZHE and the Council, are internal deadlines that apply to various government entities in the context of a larger statute governing Class 3 fill applications. Nothing in the statute presents a jurisdictional impediment to the Council's ability to make a final decision on an application, or otherwise addresses the Council's authorization to approve or deny the temporary special exception for a Class 3 fill. Consequently, PGCC § 27-405.01(a)(1) is a non-jurisdictional time prescription, subject to waiver and forfeiture.

Finally, we return to the plain language of PGCC § 27-405.01(a)(1) and point out that it states that "[w]here the Council makes the final decision, the Council's final order **shall** be issued within **60 days** of the Examiner's decision." (Emphasis added). The ZHE in this case issued her timely decision (i.e., within 30 days of the public hearing) on July 21, 2017. The Council issued its decision in this case **206 days** later—on February 12, 2018. If we accord the Council the deference that it demands in interpreting the ordinance, *see Ware*, 223 Md. App. at 681, then its own failure to abide by the timeframes contained

---

[12] As was noted above, the ZHE's decision to approve or deny an application for a special exception becomes final 30 days after filing the written decision, unless the District Council "elects to make the final decision on the case itself." PGCC § 27-312(a)(1)(C). In turn, PGCC §§ 27-314 and 27-316 authorize the Council to approve special exceptions and to grant variances. Section 27-314 provides, "The District Council may approve Special Exceptions, in accordance with the requirements of this Subtitle (subject to the delegation of this authority to the Zoning Hearing Examiner in Subdivision 7, above)." Section 27-316 states that the Council "may grant variances from the strict application of this Subtitle in conjunction with its approval of a Special Exception (or revised site plan) in accordance with Part 3, Division 5, Subdivision 2, of this Subtitle."

17

in PGCC § 27-405.01(a)(1) is an indication that they may be directory rather than mandatory, but certainly not jurisdictional.

Accordingly, for the reasons we discuss next, the Council was not bound to dismiss Palmer Road's Application for a special exception and variance.

## C. Waiver

The record in this case demonstrates that there was an ongoing waiver of the timeframes in PGCC § 27-405.01(a)(1) at all levels of County government involved in the application review process. The 120-day hearing deadline was first waived when a member of the Technical Staff informed Palmer Road that it was not going to be possible to "hold a hearing by February 7, 2017" per § 27-405.01(a)(1) and that, therefore, "[a] waiver request will need to be filed with the Zoning Section and we will provide that information to the ZHE either when we transmit the case or prior to transmitting." Both the Planning Board and the ZHE ratified Palmer Road's waiver request when the Planning Board approved the Application and the ZHE held a public hearing and subsequently issued a decision approving the Application. When the Council exercised its authority to be the final arbiter, it never raised the issue until it issued its final decision in this case. The Council conceded during oral argument before this Court that, on October 23, 2017, the Council held oral argument on the matter and failed to challenge the Application on the basis of the statutory timeframes, or question Palmer Road on the issue. Palmer Road, therefore, never had notice of the issue nor an opportunity to address why the public hearing was not held within 120 days. Finally, the Council failed to follow the direction that its

18

final order "**shall** be issued within 60 days of the Examiner's decision." PGCC § 27-405.01(a)(1).

"Waiver . . . may result from an express agreement or be inferred from circumstances." *Food Fair Stores, Inc. v. Blumberg*, 234 Md. 521, 531 (1964). It is axiomatic that "a person cannot complain of the action, or inaction, of others when he is the cause of the delay that ensues." *State v. Musgrove*, 241 Md. 521, 532 (1966). This Court applied the long-recognized principle when considering an issue close to that presented here in *Pope v. Secretary of Personnel*, 46 Md. App. 716 (1980), *cert. denied*, 289 Md. 739 (1981). A tenured public employee, Gloria Pope, asked this Court to determine whether "shall," as used in a statute requiring the Secretary of Personnel to hear her termination case within 90 days, was mandatory or directory. *Id*. at 719-20. The initial hearing was scheduled for December 9, 1976 but was postponed due to Ms. Pope's illness. *Id.* at 720. Subsequent hearings were postponed without objection due to the scheduling conflicts of counsel on both sides. *Id.* Ultimately, the Secretary of Personnel did not conclude the hearing until more than eight months after the date on which it was first scheduled. *Id.* Judge Lowe, writing for this Court, addressed the issue as follows:

> Even if the provision in then Art. 64A, s 33 were mandatory, **we find that appellant's postponements effected a waiver of the statutory provision[.]** . . . **Surely, if even constitutional rights may be waived**, e. g., *Maness v. Meyers*, 419 U.S. 449, 466 (1975) (Fifth Amendment privilege against self-incrimination can be waived affirmatively.); *Barker v. Wingo*, 407 U.S. 514, 522 (1972) (Sixth Amendment right to a speedy trial can be waived.); *Singer v. United States*, 380 U.S. 24, 34 (1965) (One charged with serious federal crime may waive constitutional right to jury trial.), **statutory ones can be also**.

19

*Id.* at 720-21 (emphasis added) (citation omitted).[13]

We hold that the Council's decision to deny the Application based on procedural timeframes that were waived by the government and never raised throughout the entire review and appeal process was arbitrary and capricious. *See Md. Real Estate Comm'n v. Garceau*, 234 Md. App. 324, 352 (2017) (reversing agency sanction suspending real estate brokers license and imposing fine as arbitrary and capricious); *see also Nat'l Envtl. Dev. Assoc.'s Clean Air Project v. E.P.A.*, 752 F.3d 999, 1009 (D.C. Cir. 2014) ("[A]n agency action may be set aside as arbitrary and capricious if the agency fails to comply with its own regulations.") (citation omitted); *see also United States v. Heffner*, 420 F.2d 809, 812 (4th Cir. 1969) (discussing cases "consistent with the [*Accardi*] doctrine's purpose to prevent the arbitrariness which is inherently characteristic of an agency's violation of its own procedures.").[14]

---

[13] This Court decided to address the statutory interpretation issue, assuming no waiver, in order to conclude the case "in light of the protracted period taken to terminate Ms. Pope's employment." *Pope*, 46 Md. App. at 721. Accordingly, as we set out above, our predecessors held that the statute was directory because "the role of the Secretary in this instance is primarily that of an arbiter," and because of the "absence of a sanction in the statute." *Id.*

[14] In *Pollock v. Patuxent Institution Board of Review*, the Court of Appeals adopted its own variation of the *Accardi* doctrine, explicated by the Supreme Court in *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260 (1954), for agencies not governed by the Maryland Administrative Procedure Act. 374 Md. 463, 503 (2003). The Court held that "an agency of the government generally must observe rules, regulations or procedures which it has established and under certain circumstances when it fails to do so, its actions will be vacated and the matter remanded. This adoption is consistent with Maryland's body of administrative law, which generally holds that an agency should not violate its own rules and regulations." *Id.* In Maryland, three conditions must be satisfied before an agency decision can be vacated under the *Accardi* doctrine. *Balt. Police Dep't v. Antonin*, 237 Md. App. 348, 369-70 (2018), *cert. denied*, 461 Md. 459 (2018). First, an agency must have

(Continued)

The government cannot invite an applicant to file a waiver of a non-jurisdictional deadline, grant that waiver, and then penalize the applicant at the end of the application process for failing to meet the deadline.[15]  To accept that an applicant's special exception request can be denied due to the failure of county agencies to meet statutory deadlines, would be to accept a policy whereby agencies involved in the review process could deliberately fail to meet statutory timeframes in order to "combat the proliferation of Class 3 fill uses" or to advance another agency agenda antithetical to a particular petitioner or development.  Needless to say, it would frustrate due process if government agencies could

violated its own "rules, regulations or procedures."  *Pollock*, 374 Md. 503.  Second, because "not every violation of internal procedural policy . . . will invoke the *Accardi* doctrine," "the agency rule or regulation at issue [must] . . . affect[] individual rights and obligations" or "confer important procedural benefits[.]"  *Id.* (quotations omitted).  Finally, the Court of Appeals added a third requirement in *Pollock* that a complainant must "show that prejudice to him or her (or it) resulted from the violation in order for the agency decision to be struck down."  *Id.* at 504.

[15] The doctrine of estoppel does not determine the outcome in this case, nor did the parties raise the issue below, but we note that, although the doctrine of estoppel ordinarily does not apply against the State, it can apply to estop a chartered county on the basis of "positive acts by . . . officers that have induced the action of the adverse party" where the adverse party "incurred a substantial change of position or made extensive expenditures in reliance on the act."  *Anne Arundel County v. Muir*, 149 Md. App. 617, (2003) (quoting *Permanent Fin. Corp. v. Montgomery County*, 308 Md. 239, 249 (1986)).  For example, in *Permanent Financial Corporation v. Montgomery County*, the Court held that Montgomery County was estopped from contending that a building violated height limitations of the Montgomery County Code.  308 Md. at 242.  The Court observed that the height limitation provisions were open to "at least two reasonable and debatable interpretations," and the developer had relied upon the interpretation applied by the County at the time of the issuance of the building permit and "well into the hearing of the case by the Board[.]"  *Id.* at 251-52.  In light of the developer's "having expended substantial funds in reliance upon the permit," the Court determined that it would be inequitable to permit the County to enforce a different interpretation of the height limitations.  *Id.* at 252-53.

(Continued)

sit on applications, or otherwise delay review of requests, in order to facilitate their denial. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."). The question of what consequences should follow a failure to comply with the statutory timeframes under PGCC § 27-405.01(a)(1) where they have not been waived remains to be decided in another case in which the administrative record is properly developed.[16]

## III.

## Remand

### A. Contentions

The Council contends that, even if we decide that the word "shall" in PGCC § 27-405.01(a)(1) is directory and the Council erred in denying the Application on procedural grounds as a "sanction for non-compliance[,]" "the circuit court should have remanded the case to Council to apply the correct legal standard and issue a final decision on the **merits** of the special exception and variance applications based solely on the administrative

---

[16] Even assuming the timeframes in PGCC § 27-405.01(a)(1) are mandatory, denial of a Class 3 fill application on the basis that the timeframes were not followed *by the government* still would not be appropriate in this case. *See Harvey v. State*, 51 Md. App. 113, 121 (1982) (holding that release of an individual from commitment to the Department of Health and Mental Hygiene is an improper sanction for a violation of the mandatory time limitations in provisions governing orders of commitment); *Tucker v. State*, 89 Md. App. 295, 298-300 (1991) (noting that the relevant question, when faced with the word "shall," is "whether the sanction sought for noncompliance is an appropriate one" and holding that a three-judge panel did not lose jurisdiction over a defendant's application for review of his sentence when it failed to comply with a 30-day requirement).

22

record." Because it elected to make the final decision pursuant to PGCC § 27-312, the Council asserts, "by statute, the [ZHE's] recommendation did not become final." Thus, the Council concludes, there remains an administrative function for the Council to perform.

Palmer Road responds that the Council's decision denying its Application should be "reversed and not remanded because the record below does not contain any evidence which would support a denial of the application." According to Palmer Road, though the general remedy when an administrative agency applies the incorrect standard of review is to remand the matter, there is an exception where the remand would be futile. Palmer Road contends that a remand in this case would be futile and serve no practical purpose because no evidence was presented to the Technical Staff or the Planning Board, or presented in opposition before the ZHE or Council, that would make a denial of Palmer Road's Application "fairly debatable."

### B. Analysis

A broadly recognized, fundamental principal of administrative law holds:

> [A] reviewing court should not substitute its judgment for the expertise of the administrative agency from which the appeal is taken. This principle underlies the rule that if an administrative function remains to be performed after a reviewing court has determined that an administrative agency has made an error of law, the court ordinarily may not modify the agency order. Under such circumstances, the court should remand the matter to the administrative agency without modification. Of course, the court need not remand if the modification is so minor as to make remand inappropriate, or if remand is otherwise futile. Finally, if an administrative function remains to be performed, a reviewing court may not modify the administrative agency's action even when a statute provides that the court may "affirm, modify or set aside" because a court may not usurp administrative functions.

23

*Emps.' Ret. Sys. of Baltimore v. Dorsey*, 203 Md. App. 304, 320 (2012) (quoting *O'Donnell v. Bassler*, 289 Md. 501, 509-11 (1981) (internal citations omitted)).

We agree with the Council that an administrative function remained to be performed after the circuit court determined that it was "error, as a matter of law, for the [Council] to deny [Palmer Road's] application for a special exception and variance." *See O'Donnell*, 289 Md. at 509. Once the Council elected to make the final decision on the Application—pursuant to PGCC § 27-312(a)(2)(C)—it had original jurisdiction over the Application under PGCC § 27-132(f)(1).[17] As the Court of Appeals recently instructed, "under PGCC § 27-132(f)(1), the District Council exercises original jurisdiction over special exception and variance cases originating before the ZHE[.]" *Grant*, 465 Md. at 534. Though Palmer Road points out that its Application was met with no opposition, the Council expressly did not make a decision on the merits and instead denied the Application on "procedural grounds." Accordingly, we hold that there was no basis for the circuit court to usurp the administrative function in this case where the Council's determination on the merits of the Application remains to be performed. We hold, therefore, that the circuit court erred when it remanded the matter with instructions to approve Palmer Road's Application. The Council is required to consider the Application on its merits.

In sum, we affirm the circuit court's decision reversing the Council's order denying the Application on procedural grounds. However, we vacate the court's order to the

---

[17] Section 27-132(f)(1) of the Zoning Ordinance provides that, "[i]n deciding an appeal to the District Council, *or Council election to review a decision made by the Zoning Hearing Examiner or the Planning Board*, the Council shall exercise original jurisdiction." PGCC § 27-132(f)(1) (emphasis added).

Council to approve Palmer Road's requests for a special exception and variance because those determinations are within the province of the Council.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED IN PART AND VACATED IN PART; CASE REMANDED TO THE CIRCUIT COURT WITH INSTRUCTIONS TO REMAND TO THE DISTRICT COUNCIL FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. PARTIES TO PAY THEIR OWN COSTS.**